UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CITI MORTGAGE, INC.,                                      CIVIL NO. 13-144 (JRT/JSM)

       Plaintiff,

v.                                                                    <u>REPORT AND RECOMMENDATION</u>

DANIEL HUBBARD,
MARGARET HUBBARD and
PAUL ERNEST SELLORS,

       Defendants.

This matter came before the undersigned on plaintiff's Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief [Docket No. 36], Motion for an Order to Show Cause [Docket No. 59], Defendants' Motion for Summary Judgment [Docket No. 68], and plaintiff's Motion to Strike [Docket No. 69]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff CitiMortgage is a commercial financial institution that originates and services residential mortgages. Complaint, ¶1 [Docket No. 1]. Defendants Margaret and Daniel Hubbard entered into a mortgage loan in the amount of $266,000 with Argent Mortgage for property in Centennial, Colorado ("Property"). Affidavit of Thomas Harder in Support of Motion for Summary Judgment ("Harder Aff."), Ex. D (note) [Docket No. 44]. Argent Mortgage later assigned the note and mortgage to CitiMortgage. Plaintiff's Motion for Summary Judgment, p. 3 [Docket No. 36]. As mortgagee, CitiMortgage foreclosed on the Property. Complaint, ¶6.

On or about September 11, 2012, CitiMortgage received a purported order for trial in the United States District Court, District of Minnesota.  Complaint, Ex. A; Harder Aff., Ex. A.[1]  This purported order was captioned as a proceeding against CitiMortgage and its CEO, Vikram Pandit.  Id.  The order appeared to be stamped by the Clerk of Court for the District of Minnesota.  Id.  CitiMortgage's counsel in Texas received the order on September 17, 2012, and forwarded it to Foley & Mansfield, its local counsel in Minnesota, to investigate.  Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl. SJ Mem."), p. 1 [Docket No. 37].  CitiMortgage subsequently received documents from defendants Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors asserting various theories about the United States government being "cancelled" and protesting the foreclosure of the Hubbard's mortgage.[2]  Harder Aff., (Ex. B-1, pp. 2-

---

[1]     The Order is signed by "Judge Paul Ernest Sellors District Court Judge" and is stamped by the Clerk of Court.  While patently fabricated, the "order" has some indicia of authenticity, such as a case number that mimics the style of case numbers assigned in this district—12-CV-0008-PES.

[2]     Defendants appear to be members of the Sovereign Citizens Movement.  According to the FBI, the "Sovereign Citizens" movement is based on a theory that the "United States government [USG] is bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency.  Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral.  Sovereign exploit this belief by filing fraudulent financial documents charging their debt to the Treasury Department."  El v. AmeriCredit Fin. Servs., Inc., 710 F.3d 748, 750 (7th Cir. 2013) (quoting Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov. 2010), http:// info. public intelligence. net/ FBI- Sovereign Citizens. Pdf).  See also Cooper v. United States, 104 Fed. Cl. 306, 313-314 (2012) (explaining that "an individual who identifies with the Sovereign Citizen Movement considers himself to be his own sovereign, not a United States citizen, and therefore 'believe[s] that [he is] not subject to government authority.'  Gravatt v. United States, 100 Fed.Cl. 279, 282 (2011).  Members of this movement think that [t]he federal government ... has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards.  With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S.

10[3] ("Notice of Right to Cancel" and "Notice of Revocation of Power of Attorney &

Revocation of Signature Affidavit" directed to CitiMortgage, letter to CitiMortgage's

counsel "rejecting" summons issued in the instant case); B-2, pp. 1-4 (document entitled

"Official Announcement, The Disclosure 1111.1"[4]); B-3, p. 1 (document entitled "Work

Associates, My Agents, And My Private Land and Property" signed by Paul E. Sellors),

p. 2-4 (letter from Sellors addressed to "Mr. Tunheim"[5] of the "alleged" United States

District Court, District of Minnesota, "rejecting" the summons issued in the instant

case."). According to CitiMortgage, Sellors fabricated the order setting trial because

defendants disputed the validity of the mortgage against the Property. Pl. SJ Mem., p.

3.

---

citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.") (citation omitted).

[3]      The Court is referencing the page numbers assigned through CM/EFC.

[4]      Defendants' documents are nearly incomprehensible. For example, the following is an excerpt from a communication from Daniel Hubbard to CitiMortgage, dated October 2, 2012:

> The Public Trust does give Absolute Gratitude and Grace in Absolute Love and Peace to the BE'ings known as "Poof," "American Kabuki," "Kauilapele" and Brian for serving the highest good of The One in unconsciously revealing the point of origin of "the boots on the ground" attempting to implement these purported "INTERIM GOVERNMENTS," slavery systems reorganized under CODE of canceled ENTITY and its CONSTITUTION, UNITED STATES OF AMERICA unlawfully and illegally purporting to be NESARA, NESARA LAW, with authority to release prosperity funds, inclusive of those in St. Germaine's Trust.

Harder Aff., ¶4; Ex. B-2 [Docket No. 41].

[5]      Sellors is referring to the Honorable John Tunheim.

CitiMortgage commenced the instant action seeking a declaratory judgment that the Order Setting Trial is fraudulent, enjoining defendants from serving false or fraudulent papers or pleadings on CitiMortgage in the future, and awarding CitiMortgage $10,000 in damages.   Complaint, ¶¶15-29.   CitiMortgage alleged this Court had jurisdiction based on diversity and federal question, and "inherent jurisdiction over papers and pleadings published in its name and purporting to be official demands from the United States judicial system." Id., ¶¶ 3-5.

Defendants responded to CitiMortgage's Complaint with pleadings that purported to require this Court to prove it is a legitimate court, demanding payment of gold or silver to respond to CitiMortgage's discovery requests, and threatening the use of a militia against any party that violates what they view as their rights.   See, eg., Response to Summons [Docket No. 8] (letter directed to "Mr. Tunheim and Ms. Graham"[6] from Daniel Hubbard stating that he refused to acknowledge the summons unless Judge Tunheim and Magistrate Judge Graham met certain conditions, such as providing a bond and an "original accommodation agreement."); Opportunity to Cure [Docket No. 12] (document by Sellors "rejecting" CitiMortgage's complaint based on various absurd theories); Take Notice of the Following for Your Foreign, Commercial Corporate Reference [Docket No. 13] (document excerpting various unrelated court cases); Banks and "Governments" Foreclosed Worldwide [Docket No. 14] ("Notice" that all banks and governments, including the United States government, have been "cancelled" and all debts of all people everywhere have been terminated); Courtesy Notice [Docket No. 15]

---

[6]     Hubbard is referring to the Honorable Judge John Tunheim and the Honorable Magistrate Judge Jeanne Graham.

("Notice" directed to Mr. Richard Sletten, Clerk of Court of the United States District Court, District of Minnesota, that all "charters" of governments, including the United States government, have been "cancelled"); Letter to Counsel for CitiMortage [Docket No. 16] (letter "rejecting" subpoena served by CitiMortgage unless counsel produced seventeen itemized documents, which defendant Sellors then states cannot be produced); Sovereign Authority [Docket No. 22] ("reservation of rights" by Daniel Hubbard in which he declares that he is not a United States citizen "or a 14th amendment citizen").

CitiMortgage served requests for admission on defendants on or about May 8, 2013, and received no response other than a return copy of CitiMortgage's discovery with the words "I do not accept this offer to contract.  I do not consent to these proceedings" and signed by Daniel Hubbard "without prejudice UCC1:308" written across the first page.  Harder Aff., Ex. C.

On July 3, 2013, CitiMortgage moved for summary judgment, declaratory judgment and injunctive relief.  [Docket No. 36].  This motion sought: (1) a declaration that the Order Setting Trial is counterfeit and intended to deceive CitiMortgage; (2) an order permanently enjoining defendants from continuing to counterfeit court documents; and (3) attorney's fees of $10,000 for time spent investigating and responding to defendants' counterfeit orders.  Pl. SJ Mem., pp. 7-14.  CitiMortgage served the moving papers by mail on the defendants.  Affidavit of Thomas A. Harder in Support of Order to Show Cause on Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief ("Harder Aff. II"), ¶2 [Docket No. 61].

Defendants responded to CitiMortgage's motion with a document entitled "Objection to Trespassers Request for Summary-Judgment/Declaratory-Judgment/Injunctive-Relief" [Docket No. 49]. Defendants stated that CitiMortgage lacked standing, was "attempting to use this court to legitimize a frivolous unfounded action," and was "attempting to criminalize an invitation to settle the Trespassers' supposed contentions in a people's court." Id., p. 1.

On July 26, 2013, defendants served a Minnesota state court complaint against CitiMortgage's attorneys Thomas Harder and Cameron Lallier, CitiMortgage's chief executive officer, and Foley & Mansfield, PLLP (the "Foley-Citi Action"). Harder Aff. II, ¶3. The Foley-Citi Action defendants believed that this lawsuit was brought in retaliation for CitiMortgage's instant lawsuit. Memorandum of Law in Support of Defendants' Motion to Dismiss, p. 3 [Civ. No. 13-2189 (JRT/JSM), Docket No. 5]. The defendants in the Foley-Citi Action removed the matter to this Court. Notice of Removal [Civ. No. 13-2189, Docket No. 1].

In its decision recommending dismissal of the Foley-Citi Action without prejudice (for the reason that defendants were not properly served) the Court described the suit as follows:

> Plaintiffs' Complaint is very unclear, but alleged that plaintiffs were bringing an "Unlimited Civil Action" against defendants for violating the Preamble to the Bill of Rights, the First Amendment, "18 U.S.C. §47 FRAUD AND FALSE STATEMENTS," and 18 U.S.C. §13 "CIVIL RIGHTS."
>
> The Complaint alleged that the defendants, "in their capacity as agents of the State," colluded to defraud and harm the plaintiffs, who refer to themselves as "Claimants" or "Injured Claimants." Complaint, p. 4, ¶1. Specifically, plaintiffs alleged that defendants committed fraud by making "unfounded entries" into the public record regarding a non-

existent foreclosure.  Id., p. 5, ¶4.  Plaintiffs further alleged that defendants abused their "public office" by persuading United States officials into violating "United States organic and Code ordinances, thereby conspiring to deny Injured Claimant's natural rights."  Id., ¶5.  As relief, plaintiffs sought fifty ounces of .999 pure gold or a Federal Reserve Note equivalent to $65,000 to be paid to each injured claimant, and for any interest in real property located in Colorado, which the Court assumes is the foreclosed property.  Id.

Report and Recommendation, Dec. 4, 2013. [13-cv-2189 (JRT/JSM), Docket No. 17]

footnotes omitted).[7]

On August 22, 2013, defendant Sellors filed another lawsuit in state district court, in which he named multiple federal judicial officials and federal and state law enforcement officers as defendants, including President Obama and Attorney General Holder, and sought an award in the sum of $6,394,960, paid with 4737 "Total ounces of .999 pure gold." ("Government Officials Lawsuit").  Harder Aff. II, ¶6; Paul Ernest of the House of Sellors, v Barack Obama, et. al., Civ. No. 13-2484 (SRN/JSM), Docket No. 1, pp. 19-20.  This suit arose out of Sellors' criminal indictment in the District of Colorado, 13-cr-140-CMA.[8]  The government defendants removed this suit to Federal District Court on September 11, 2013.  Notice of Removal. [Civ. No. 13-2484 (SRN/JSM),

---

[7]     Plaintiffs' objections to this Report and Recommendation are pending before Judge Tunheim.  [Docket Nos. 17, 18].

[8]     Sellors was indicted in Colorado and found guilty for using a forged and counterfeit seal of the "United States of America District Court, District of Minnesota" to authenticate fraudulent documents, including an order to set trial by jury, an order of custody, and orders to reschedule jury trials.  United States of America v. Paul Ernest Sellors, 13-cr-140-CMA (D. Colo.); http://www.fbi.gov/denver/press-releases/2013/sentencing-set-for-paul-sellors-after-jury-finds-him-guilty-of-using-counterfeit-united-states-court-seal.  On November 15, 2013, judgment was entered against Sellors, remanding him into custody to serve a sentence of eighteen months for each of the three counts on which he was convicted, to be served concurrently. Judgment in a Criminal Case. [13-cr-140-CMA (D. Colo.), Docket No. 141].

Docket No. 1].  Motions to dismiss by these defendants are currently pending.  Docket Nos. 5, 18.

Defendants did not appear at the hearing on CitiMortgage's Motion for Summary Judgment held before this Court on September 3, 2013.  Court Minutes [Docket No. 57].  At the summary judgment motion hearing, counsel for CitiMortgage modified the relief CitiMortgage was seeking, asking that defendants be prohibited from filing any suit pro se or alternatively, they be prohibited from filing any suit without a court order allowing them to do so.  CitiMortgage argued that defendants were given notice of this expanded scope of relief because CitiMortgage had described it in its Reply to defendants' response to the motion for summary judgment, and the Reply was served on defendants.  See Docket No. 55.  The broader relief was based on defendants' more recent filings in state court, which CitiMortgage described as "continual and contumacious."  Pl. Reply, p. 2.  For example, counsel for CitiMortgage attempted to meet and confer with defendants.  Id.  According to counsel "[t]he outcome of that attempt was the serving and filing of a[n] action in state court. . . ." (i.e. the Foley-Citi Action).  Id.

This Court continued the hearing so that an Order to Show Cause could issue, which would attach a copy of a proposed Report and Recommendation drafted by CitiMortgage, explicitly describing for defendants the relief sought by CitiMortgage and that could be granted if they did not appear.

On September 9, 2013, CitiMortgage moved for an Order to Show Cause why an order should not issue prohibiting defendants from filing any further lawsuits except in accordance with certain conditions.  [Docket No. 59].[9]

On September 17, 2012, defendants filed a document entitled "Notice of Collusion to Deny Access to One of the Courts of the Freely Associated Compact States" [Docket No. 63].  Defendants alleged that CitiMortgage's counsel Harder used his position as an officer of the court to:

> circumvent the Articles of Confederation, the Constitution of the United States, the Minnesota constitution, the Federal Codes, the state known as Minnesota and the people's unalienable rights to further trespass on Injured Claimants and the free people of this soil known as Minnesota."

Id., p. 2.  Defendants sought to have the Court consider Rule 11 sanctions against Harder because he gave false information to the federal district court, apparently concerning jurisdiction over the instant lawsuit.  Id., pp. 3-4.  Defendants contended that there was no federal question jurisdiction pursuant to 28 U.S.C. §1331, and that Harder made false representations regarding the amount in controversy to support the claim for diversity jurisdiction.  Id., p. 3.  Specifically, defendants asserted that Harder had only demanded $10,000 in damages in CitiMortgage's Complaint, which did not meet the jurisdictional threshold of $75,000, and that to the extent that CitiMortgage claimed it was harmed by defendants' filings, CitiMortgage had not proven that the harm it suffered supported the jurisdictional threshold amount.

---

[9]     The Court originally contemplated issuing an Order to Show Cause, thus CitiMortgage filed its Motion for An Order to Show Cause.  Ultimately, the Court issued an Order, not an Order to Show Cause.  [Docket No. 64].

On September 24, 2013, this Court issued an Order stating that it had continued the hearing on CitiMortgage's Motion for Summary Judgment until October 8, 2013, and at that hearing, the Court would address whether the following relief should be granted:

1.      Declaratory judgment in favor of the plaintiff CitiMortgage, Inc. determining that the purported order attached to the Complaint as Exhibit A [Docket No. 1-1] is counterfeit and offered for a fraudulent purpose.

2.      A permanent injunction enjoining defendants Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors from creating any fraudulent or counterfeit pleadings, papers, orders, or other documents purporting to be from or involving any federal or state court action and serving any pleadings, papers, orders or other document purporting to be from or involving any federal or state court action, except by personal service on the Plaintiff in accordance with the Federal Rules of Civil Procedure.

3.      An injunction preventing Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors from filing any civil action in this or any other federal court, or any state court against CitiMortgage, Inc. or any of its officers or employees without first obtaining leave of this court.  In seeking leave to file, defendants must certify that the claim or claims they wish to present are new claims never before raised and disposed of on the merits by any federal court.  Defendants must also certify that the claim or claims are not frivolous, malicious, or brought in bad faith.  Additionally, Defendants must cite or affix a copy of the attached Order to any motion for leave to file a claim.  Failure to comply strictly with the terms of this injunction will be sufficient grounds for summarily denying leave to file or dismissing any action filed.

4.      An injunction preventing defendants Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors from filing any civil action in the United States District Court for the District of Minnesota without first obtaining leave of this Court.  In seeking leave to file, Defendants must certify that the claim or claims they wish to present are new claims never before raised and disposed of on the merits by any federal court.  Defendants must also certify that the claim or claims are not frivolous, malicious, or brought in bad faith.  Additionally, Defendants must cite or affix a copy of the attached Order to any motion for leave to file a claim.  Failure to comply strictly with the terms of this injunction will be sufficient grounds for summarily denying leave to file or dismissing any action filed.

5.     Defendants shall be jointly and severally liable to the plaintiff in the amount of $_____, as set forth in the Affidavit of Cameron A. Lallier filed on the day of the hearing in this matter.[10]

6.     Any violation of the terms of the attached Order will be deemed contempt of Court and may subject Defendants to contempt proceedings.

7.     This Court shall retain jurisdiction to enforce the terms of the attached Order, including by means of contempt proceedings.

This Court ordered that defendants' response be filed on or before October 4, 2013.  Order, p. 2 [Docket No. 64].  Attached to this Order was a proposed Order prepared by CitiMortgage's counsel explicitly describing the relief CitiMortgage would seek at the continued hearing.  Id.

On October 2, 2013, defendants filed a response.  Response as Ordered by Magistrate Janie S. Mayeron in Document No. 64 ("Def. Response") [Docket No. 65]. Defendants claimed that CitiMortgage lacked standing because it is "property" and not a citizen and thus cannot be a plaintiff in a lawsuit.  Id., pp. 2-3.  Defendants also challenged the district court's jurisdiction, claiming that CitiMortgage failed to prove that there was at least $75,000 at issue.[11]  Id., p. 2.

Also on October 2, 2013, defendants filed a document entitled "AMENDED CIVIL ACTION/common-law action" [Docket No. 66].  This document appeared to be a copy of the Complaint in the Foley-Citi Action, but with the case number of the instant lawsuit written by hand on the pleading.  Id.

Defendants did not appear at the continued summary judgment hearing on October 8, 2013.  Court Minutes [Docket No. 67].

---

[10]     Lallier did not file an affidavit.

[11]     Defendants also complained about CitiMortgage's removal of the Foley-Citi Action to federal court.  Def. Response, pp. 3-4.

Following the hearing, on October 31, 2013, defendants filed a document entitled "Demand for Summary Judgment" [Docket No. 68] in which they demanded summary judgment in their favor because CitiMortgage had not objected to the "undeniable" facts defendants presented in their Response.  This pleading essentially restated the "facts" described in defendants' Response—that CitiMortgage is property and not a citizen, and that CitiMortgage improperly removed the Foley-Citi Action to federal court.  Id., pp. 1-4. Defendants sought an order that CitiMortgage lacked standing "relative to the soil known as land you and other corporations reference as. . .20734 E. Dorado Place-Centennial, Colorado. . . ." and ordering Lallier, Harder, and the owners of CitiMortgage and Jane Fraser (who are not parties in the instant action) to pay each of the "injured claimants" the amount of $65,000.  Id., pp. 4-5.

On November 21, 2013, CitiMortgage moved to strike defendants' purported summary judgment motion, arguing that the motion raised issues and named parties not at issue in the instant suit, the motion failed to comply with Federal Rule of Civil Procedure 56, and the pleading was untimely because the Court already had CitiMortgage's Motion for Summary Judgment under advisement.  Motion to Strike Pleading and Response to Demand for Summary Judgment, pp. 1-5 [Docket No. 69]. CitiMortgage argued that defendants' claims regarding standing were meritless and, at any rate, the motion appeared to seek relief in connection with the Foley-Citi Action, not the instant action.  Id., p. 5.  CitiMortgage sought to strike the pleading under Rule 12(f). Memorandum of Law in Support of Motion to Strike, pp. 3-4.  According to CitiMortgage, there was no basis for the relief requested—defendants have no interest in the

Colorado property, and the Court cannot grant relief against non-parties Harder, Lallier and Jane Fraser in the instant action. Id., pp. 7-8.

On December 6, 2013, this Court issued an Order requiring defendants to serve and file a response to CitiMortgage's Motion to Strike Pleading and Response to Demand for Summary Judgment on or before December 18, 2013. Order, p. 1 [Docket No. 72]. The Court also permitted CitiMortgage to file a reply to its Motion to Strike Pleading. Id., pp. 1-2.

On December 6, 2013, defendants filed a document entitled "Response to Document 69 and Motion to Strike Plaintiff's Pleading" [Docket No. 73]. This "gist" of this pleading was that CitiMortgage failed to establish that there was at least $75,000 in controversy because that amount was based on the Order Setting Trial that CitiMortgage claimed was fraudulent. Id., p. 3. Further, CitiMortgage failed to refute defendants' claim that CitiMortgage was "property" and not a citizen for the purposes of standing. Id.

On December 18, 2013, defendants filed a document entitled "Notice Praecipe for Judgment of Non Pros with Relief Granted Against Cameron Lallier and Thomas Harder and Jane Fraser and the Owners of CitiMortgage, Inc." [Docket No. 74].[12] This pleading demanded that CitiMortgage file a verified complaint in the instant action, signed by CitiMortgage's corporate officers or owners within twenty-one days of the date of defendants' notice or defendants would reserve the right to move the Court for

---

[12] The Court will not address these pleadings (Docket Nos. 74, 75] in this Report and Recommendation. They are irrelevant to CitiMortgage's motion for summary judgment.

"Praecipe for Judgment of Non Pros."[13] Id., p. 2.  Defendants appeared to believe that the Complaint in the instant action was required to be verified and signed by corporate representatives of CitiMortgage.

Also on December 18, 2013, defendants filed a document entitled "Demand for Disclosure and Discovery" [Docket No. 75].  Defendants sought, among other items of information, a copy of the "Verified Authority" from the owners of CitiMortgage allowing Harder to speak on its behalf; a copy of the source relied on to establish the jurisdiction threshold of $75,000; a copy of the Congressional Act establishing CitiMortgage's standing; and the property and monetary damages CitiMortgage claimed to have suffered.  Id., pp. 1-2.

CitiMortgage did not file a substantive reply to defendants' response to CitiMortgage's Motion to Strike.  See Reply Memorandum of Plaintiff on Motion to Strike Pleading and Response to Demand for Summary Judgment [Docket No. 77] (stating only that CitiMortgage was not replying to defendants' response because defendants "failed to state any articulable reason or legal argument for denying the relief requested by the Plaintiff.")

---

[13]     As best as this Court can determine, a "Praecipe to Enter Judgment of Non Pros" is particular to the Pennsylvania Civil Practice Rules and relates to a plaintiff's failure to file a complaint after service of the complaint on the defendant.  231 Pa. Code Rule 237.1.

III.   **DISCUSSION**

As it must, the Court first addresses defendants' arguments regarding standing and jurisdiction.[14]

A.   <u>Standing</u>

To establish standing, a plaintiff must demonstrate: (1) an "injury in fact," which is concrete and particularized, and which is "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the complained-of conduct; and (3) it is "likely," and not "merely speculative" that a favorable decision will redress the injury. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559-60 (1992) (internal quotations omitted). CitiMortgage alleged that defendants harmed it by serving the fraudulent Order Setting Trial and forcing CitiMortgage to expend time and resources to ascertain the legitimacy of that document. Complaint, ¶¶7-12. This is the particularized injury contemplated by <u>Lujan</u>. There is no question that the relief CitiMortgage seeks will redress this injury.

Further, corporations can bring suits in federal court. <u>See</u> Fed. R. Civ. P. 17(b)(2) (providing that a corporation's capacity to sue or be sued is determined "by the law under which it is organized."). Indeed, for the purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and the state where its "principle place of business" is located. 28 U.S.C. §1332(c)(1). Nonetheless, for reasons

---

[14]   Defendants are <u>pro</u> <u>se</u>. Consequently, the Court holds defendants to a pleading standard that is "less stringent than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

described below, CitiMortgage does not have standing to prosecute a violation of 18 U.S.C. §919 in the guise of a civil lawsuit.

### B.   Jurisdiction

CitiMortgage asserted that this Court has both diversity jurisdiction and federal question jurisdiction, along with "inherent jurisdiction."[15]   Complaint, ¶¶3-5.   The Complaint does not flesh out the jurisdictional statements, but merely states that "this Court has jurisdiction over this action based on the diversity between the parties and the amount in controversy which the Defendants have alleged to be over $75,000." Id., ¶3. As to federal question jurisdiction, the Complaint alleged that "this court has jurisdiction over this action based on a federal question.   The Defendants allege a claim under the Constitution of the United State of America in an action purportedly pending in this court.   Article III, Section 2 gives the federal courts original jurisdiction over Constitutional claims." Id., ¶4.   CitiMortgage appeared to be referencing the fraudulent Order Setting Trial, which stated that "pursuant to the Constitution which is the Supreme Law of the Land this Article III Court verifies that the party signing below states that the case is ready and set for trial."   Complaint, Ex. A.

Defendants have challenged CitiMortgage's claims of jurisdiction based on federal question and diversity jurisdiction.   Specifically, defendants argued that federal question jurisdiction could not be based on a document – the Order Setting Trial – that CitiMortgage claimed was fraudulent.   Notice of Collusion, p. 3 [Docket No. 63].   As for

---

[15]   This Court has no idea what CitiMortgage means by this Court's "inherent jurisdiction."   "Federal Courts are courts of limited, not general, jurisdiction." Thomas v. Basham, 931 F.2d 521, 522 (8th Cir. 1991).

diversity jurisdiction, defendants maintained that CitiMortgage has not established the jurisdictional threshold of $75,000.  See Def. Response, p. 2.

### 1.    Federal Question Jurisdiction

At the hearing on October 8, 2013, CitiMortgage's counsel stated that the primary basis of jurisdiction was federal question, based on Sellors' violation of a federal statute. Sellors was convicted in Colorado of violating 18 U.S.C. §505, Use of a Counterfeit Seal of a United States Court.[16]  The Complaint cited 18 U.S.C. §912.[17]  Complaint, ¶25.

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "Under the well pleaded complaint rule, a federal question must appear on the face of the plaintiff's complaint to create federal question jurisdiction."  Johnson v. MFA Petroleum Co., 701

---

[16]    This provision states:

> Whoever forges the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined under this title or imprisoned not more than five years, or both.

[17]    This provision states:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency, or officer thereof, and acts as such, or in such a pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years or both.

F.3d 243, 247 (8th Cir. 2012) (citing <u>Caterpillar v. Williams</u>, 482 U.S. 386, 392 (1987)). The phrase "arising under" means generally that "[a] suit arises under the law that creates the cause of action." <u>American Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260 (1916). "The complaint must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." <u>Martinez v. United States Olympic Comm.</u>, 802 F.2d 1275, 1280 (10th Cir. 1986).   Both 28 U.S.C. §§1331 and 1332 are "restricted to conveying jurisdiction over civil actions." <u>Kaw Nation v. Springer</u>, 341 F.3d 1186, 1188 (10th Cir. 2003).  As a general matter, crimes are prosecuted by the government, not by private parties.  <u>See Connecticut Action Now, Inc. v. Roberts Plating Co.</u>, 457 F.2d 81, 86–87 (2d Cir.1972).  Private individuals do not have the right to prosecute defendants for alleged violations of federal criminal statutes.  <u>Whatley v. United Parcel Serv., Inc.</u>, 2009 WL 3756624, at *10 (E. D. Mo. 2009) (citing <u>In re Persico</u>, 522 F.2d 41, 54 (2d Cir. 1975); <u>Uka v. Mama's Bar & Grill Rest.</u>, 2006 WL 1752293, at *10 (E.D.Mo.2006)). Consequently, "[a]s a general rule, a civil plaintiff has no standing to assert a claim arising under a criminal statute." <u>Winkle v. Sargus</u>, Civ. No. 2:14-0003, 2014 WL 111173, at *1 (S.D. Ohio Jan. 10, 2014) (citing <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 316 (1979) ("[T]his Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'")).

Neither the criminal statute cited by CitiMortgage in its Complaint, 18 U.S.C. §919, nor the statute under which Sellors was prosecuted in Colorado, 18 U.S.C. §505, grants a private right of action, either express or implied.  Therefore, an alleged violation

of a criminal statute cannot furnish a basis for jurisdiction pursuant to §1331. Masoud v. Suliman, 816 F.Supp. 2d 77, 80 (D.C. Cir. 2011) (citing Leggett v. Powers, Civ. No. 09–558, 2009 WL 4032664, at *1 (D.D.C. Nov. 20, 2009) ("Plaintiff's harassment claim against [the defendant] does not present a federal question under [28 U.S.C.] § 1331, and he cannot bring a private right of action based on defendant's alleged criminal behavior."); Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges, 248 F.Supp.2d 17, 23 (D.D.C.2003) (finding that "plaintiff is precluded from asserting any claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action.").

Additionally, CitiMortgage's allegation that federal question jurisdiction is proper based defendants' statement in the fraudulent Order Setting Trial is rejected. Contrary to CitiMortgage's characterization of the statement as a "claim" (Complaint, ¶4), defendants invoked the Constitution only as the basis for Sellors' authority to sign the fraudulent order.

For all of these reasons, this Court finds that there is no federal question jurisdiction over CitiMortgage's Complaint.

### 2.    Diversity Jurisdiction

There is no dispute that there is diversity of citizenship between CitiMortgage, a New York corporation, the Hubbards, who are citizens of Colorado and Sellors, a Minnesota resident. Complaint, ¶¶1, 2. The problem here is that the amount alleged in the Complaint as damages – $10,000 – falls far short of the jurisdictional minimum required to support a claim of diversity jurisdiction.

The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum." <u>Bell v. Hershey Co.</u>, 557 F.3d 953, 956 (8th Cir. 2009). "[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.   If the defendant challenges the plaintiff's allegations of the amount in controversy, then the <u>plaintiff must establish jurisdiction by a preponderance of the evidence</u>." <u>Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC</u>, 620 F.3d 926, 931 (8th Cir. 2010) (citations omitted) (emphasis added).

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" <u>James Neff Kramper Family Farm P'ship v. IBP, Inc.</u>, 393 F.3d 828, 833 (8th Cir. 2005) (quoting <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977)); <u>see also</u> <u>Usery v. Anadarko Petroleum Corp.</u>, 606 F.3d 1017, 1018 (8th Cir. 2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue."); <u>Jackson v. American Bar Ass'n</u>, 538 F.2d 829, 831 (9th Cir.1976) ("Where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented.").

CitiMortgage based jurisdiction on the amount "which the Defendants have alleged to be over $75,000."   Complaint, ¶3.  CitiMortgage did not elaborate on this

statement in any of its subsequent pleadings and the Court was left to guess as to what CitiMortgage had in mind.[18]

More significantly and fatal to its claim of diversity jurisdiction, CitiMortgage only alleged $10,000 in damages, (Complaint, ¶29) and when challenged by defendants, did not provide this Court with any evidence to suggest that it could meet the $75,000 threshold.   Neither did CitiMortgage attempt to establish through an affidavit or other form of evidence that the value of the right it sought to establish through its claims for declaratory judgment and injunctive relief met or exceeded the jurisdictional threshold. The fact is that defendants challenged CitiMortgage's statement of diversity jurisdiction and it was up to CitiMortgage to show by a preponderance of evidence that such jurisdiction exists.   It failed to do so.   Therefore, the Court has no choice but to conclude that it lacks jurisdiction over CitiMortgage's Complaint and that the matter must be dismissed for want of jurisdiction.[19]

---

[18]    Perhaps CitiMortgage was referencing the value of the underlying mortgage that was foreclosed, which appeared to trigger the fraudulent Order Setting Trial.  Not only would this be pure speculation, but the Court fails to see how the value of the Hubbards' mortgage has anything to do with the relief sought by CitiMortgage in this suit.

[19]    Had this Court concluded that jurisdiction was proper under §1331 or §1332, it would have recommended granting in part CitiMortgage's Motion for Summary judgment.  Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).   Declaratory judgment is appropriate when "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and. . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Minnesota Lawyers Mut. Ins. Co.v. Antonelli, Terry, Stout & Kraus, LLP, 355 Fed. Appx. 698, 701 (4th Cir. 2009) (citations omitted).

It is uncontested that following the foreclosure of the Hubbards' home in Colorado, the Hubbards created and signed the fabricated order ostensibly issued from this District Court directing CitiMortgaqe to appear for trial in this Court, and Sellors signed the order as the Judge.  Complaint, Ex. A; Harder Aff., Ex. A.  On that basis, plaintiff would be entitled to summary judgment and declaratory judgment finding that the order is counterfeit.

Permanent injunctive relief is appropriate when a plaintiff shows (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (citing Weinberger v. Romero–Barcelo, 456 U.S. 305, 311–313 (1982)).  In determining whether a party faces a threat of irreparable harm, the Court considers the likelihood of future violations and whether an "injunction is necessary to prevent future violations." United States v. Articles of Drug, 825 F.2d 1238, 1248 (8th Cir. 1987).  Consequently, "a defendant's voluntary cessation 'is an important factor bearing on the question of whether a court should exercise its power to enjoin defendant.'"  Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc., 83 F.Supp.2d 1016, 1020 (D. Minn. 2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 283 (1982)).

In response to the instant action and CitiMortgage's Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief, defendants have filed numerous incomprehensible pleadings, (e.g. Docket Nos. 8, 12, 13-16, 22, 23, 24, 26-34, 36, 63, 66 68, 74, 75); have commenced two actions in state court – one against CitiMortgage's attorneys and another against a variety governmental officials – which have every indicia of being frivolous; and have peppered various pleadings in this case with theories unfounded in the law such as the sovereign citizen political theory, (Docket Nos. 49, 63, 65, 66) . See United States v. Hart, 701 F2d 749 (8th Cir. 1983) (finding the justification of sovereign citizenship to be frivolous where the defendant used it to justify filing "common law liens" against the properties of three federal Internal Revenue Service employees); see also United States v. Hardin, 489 Fed. Appx. 984, 986, 2012 WL 4840794, at *1 (8th Cir. 2012); Coppedge v. Deutsche Bank Nat'l Trust, 511 Fed. Appx. 130, 132 (3rd Cir. 2013) (stating that  plaintiff's "sovereign-citizen-based averments, which frequently rely on attacks on the judiciary and invocations of alchemistic, archaic, and irrelevant formalism, are unlikely to bring him relief in any court of law. . . .") (emphasis in original); United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing defendant's proposed "sovereign citizen" defense as having "no conceivable validity in American law."); Duwenhoegger v. King, Civ. No. 10-3965(PAM/JSM), 2012 WL 1516865, at *14 (D. Minn. Feb. 13, 2012) (holding "any argument by plaintiff that he is not subject to the laws of Minnesota or the United States because he is a "Sovereign Citizen" is frivolous.") (citations omitted).

If CitiMortgage had established jurisdiction, this Court would have concluded that all of the elements necessary for permanent injunctive relief are present.  CitiMortgage suffered irreparable injury by having to devote resources to respond to defendants' repeated and frivolous filings in this matter.  Monetary damages are insufficient to compensate CitiMortgage, as it is a virtual certainty that such damages will never be paid.  In balancing the hardships between CitiMortgage and defendants, it is evident that CitiMortgage has suffered and will continue to suffer hardship in having to respond to defendants' pleadings, while the hardship to defendants is negligible.  It is not a hardship to be enjoined from filing meritless, harassing lawsuits, fraudulent orders and nonsensical pleadings.  Finally, the public interest would be served by enjoining future similar behavior by defendants.   The public has right to rely on the orderly administration of justice, which has been undermined by defendants' counterfeit order, frivolous and unintelligible pleadings, disrespectful references to the federal judiciary, and rejection of the Federal Rules of Civil Procedure.  See e.g. Harder Aff., Ex. C (defendants' response to CitiMortgage's Request for Admissions, stating "I do not accept this offer to contract.  I do not consent to these proceedings.").   Additionally, there is no sign that defendants intend to voluntarily cease their frivolous lawsuits.

It also is well accepted that where a party has demonstrated a pattern of frivolous, repetitious, malicious, vexatious, or harassing litigation, and where such litigation is likely to continue in the absence of equitable intervention, the court has the authority to enjoin that party from filing, continuing, or otherwise litigating his frivolous claims.  See, 28 U.S.C. § 1651(a).  See also, Sassower v. Carlson, 930 F.2d 583, 584 (8th Cir. 1991) (requiring plaintiff who filed repeated, vexatious lawsuits naming as defendants the district court clerk and magistrate judge who issued a Report and Recommendation stating that his claims in another suit were frivolous, to seek leave of court before filing any further suits in the District of Minnesota); Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co. 271 F.Supp.2d 142 (D. D.Cir 2003) (granting defendants' motion for an order prohibiting plaintiff from filing additional complaints without leave of court); Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (stating that the courts have "an obligation to protect and preserve the sound and orderly administration of justice"). "In fashioning a remedy to stem the flow of frivolous actions, a court must take great care not to unduly impair a litigant's constitutional right of access to the courts." Urban, 768 F.2d at 1500.  However, in appropriate circumstances a court may issue a very broad injunction.  Id. (enjoining plaintiff from "filing any civil action in this or any other federal court of the United States without first obtaining leave of that court) (emphasis added); In re Green, 669 F.2d 779, 787 (D.C. Cir. 1981) (ordering that litigant "may not file any civil action without leave of court.") (emphasis added), abrogated on other grounds, Hurt v. Social Sec. Admin., 544 F.3d 308, 310 (C.A.D.C. 2008).

In explaining the need to deter those who abuse the judicial process, the court in In re Green stated:

IV.     **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

(1)     CitiMortgage's Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief [Docket No. 36] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. §1331 and §1332;

---

Our order is admittedly severe.  But we believe severity is called for at this time. This court does not intend to be burdened and harassed by the frivolous and malicious filings that have become the trademark of [the litigant].  We hope the genuine prospect of further incarceration that our order raises will send a clear message to [the litigant] to observe strictly the terms and conditions of this order or else risk another postponement of his release from prison.  We are not relying on any hope of reforming [the litigant], or of appealing to his reason; we are saying point-blank that if he continues to show his contempt for the orderly judicial process, that process will accord him further time in prison as summarily as the law allows.

669 F.2d at 787.

Therefore, again assuming that the Court had determined it enjoyed jurisdiction over this action, the Court would have recommended the following relief:

(1)     The order setting trial attached as Exhibit A to the Complaint be declared void.

(2)     Defendants be permanently enjoined from creating, serving or filing in any state or federal court, or in connection with any state or federal suit, any fraudulent or counterfeit pleadings, papers, orders, or other documents purporting to be from or involving any federal or state court action.

(3)     Defendants be enjoined from filing any civil action in this court or any other federal or state court against CitiMortgage, Inc. or any of its officers or employees without first obtaining leave of the court in which they seek to commence an action.  In seeking leave to file, defendants must certify that the claim or claims they wish to present are new claims never before raised and disposed of on the merits by any state or federal court.  Defendants must also certify that the claim or claims are not frivolous, malicious, or brought in bad faith.

(2)   CitiMortgage's Motion for an Order to Show Cause [Docket No. 59] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. §1331 and §1332;

(3)   Defendants' Motion for Summary Judgment [Docket No. 68] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. §1331 and §1332;

(4)   CitiMortgage's Motion to Strike [Docket No. 69] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. §1331and §1332.

(5)   This matter be dismissed without prejudice.

Dated: January 21, 2014                         *Janie S. Mayeron*
                                                              JANIE S. MAYERON
                                                              United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 4, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.